**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| ROBERT L. TONEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 2:25-cv-02916-TLP-tmp |
| v. | ) | |
| | ) | |
| WARDEN C. HARRISON, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DIRECTING CLERK TO MODIFY DOCKET, GRANTING RESPONDENT'S
MOTION TO DISMISS, DISMISSING § 2241 PETITION, CERTIFYING THAT AN
APPEAL WOULD NOT BE TAKEN IN GOOD FAITH, AND DENYING LEAVE TO
PROCEED IN FORMA PAUPERIS ON APPEAL**

Pro se Petitioner Robert L. Toney[1] petitions for habeas corpus relief under 28 U.S.C.

§ 2241.  (ECF No. 2.)  Respondent Warden Harrison now moves to dismiss the Petition.[2]  (ECF

No. 10).  Petitioner responded in opposition.  (ECF No. 13.)  Respondent did not reply, and the

---

[1] Petitioner is currently incarcerated at the Federal Correctional Institution in Memphis, Tennessee ("FCI Memphis") and is scheduled for release from the Bureau of Prisons ("BOP")' custody on October 7, 2028.  *See* Federal BOP, Inmate Locator (Register No. 33777-045) (last accessed Apr. 29, 2026).

[2] Respondent filed the Motion under seal.  "The courts have long recognized [] a 'strong presumption in favor of openness' as to court records."  *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) (quoting *Brown v. Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983)).  "Only the most compelling reasons can justify non-disclosure of judicial records."  *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983).  Here, only one of the exhibits to the Motion to Dismiss—ECF No. 10-6—contains unredacted personal identifying information.  The Court sees no reason to keep the Motion to Dismiss itself and the other exhibits under seal.  And so the Court respectfully **DIRECTS** the Court's Clerk's Office to unseal the Motion to Dismiss and all attached exhibits except for ECF No. 10-6.

time to do has now passed.  For the reasons below, the Court **GRANTS** Respondent's Motion to Dismiss and **DISMISSES** the Petition **WITH PREJUDICE**.

## BACKGROUND

In early 2020, Petitioner pleaded guilty in the United States District Court for the Western District of Missouri to one count of distribution of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), one count of possession with the intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and one count of interstate travel in aid of a racketeering enterprise, in violation of 18 U.S.C. § 1952(a)(3).  (*See United States v. Robert Lucious Toney*, No. 2:19-cr-04018-BCW, W.D. Mo. (ECF Nos. 11, 25, 26).)  The District Court sentenced Petitioner to incarceration for 151 months, followed by supervised release for five years.  (*See id.*, (ECF No. 38).)  Petitioner did not appeal his sentence.  But he moved in the District Court for compassionate release and a sentence reduction under Amendment 821 of the United States Sentencing Guidelines.  (*Id.* (ECF Nos. 40, 44).)  The District Court denied both Motions.  (*Id.* (ECF Nos. 41, 49).)

### I.    The Petition

Petitioner petitioned here on September 26, 2025.  (ECF No. 2.)  He challenges how the BOP applied–or rather, did not apply—Earned Time Credit ("ETC") to him under the First Step Act ("FSA").[3]  (*Id.* at PageID 2–3.)  According to Petitioner, he has accrued about 400 days of ETCs.  (*Id.* at PageID 2.)  But he alleges that in 2023, the BOP "expressly eliminat[ed] 'unresolved pending charges and/or detainers' as disqualifying factors for FSA credits."  (*Id.*)

---

[3] The FSA allows prisoners to earn ETCs toward prerelease custody or supervised release by successful completion of "evidence-based recidivism reduction programming" or "productive activities."  18 U.S.C. § 3632(d)(4)(A).  And under the Second Chance Act ("SCA"), the BOP assesses each inmate to determine whether he or she may qualify for up to 365 additional days of early transfer to pre-release custody.  *See* 18 U.S.C. § 3624(c).

Petitioner contends that the BOP's refusal to apply his ETCs because of a detainer against him "violates both the statutory text of the FSA and the BOP's updated policy." (*Id.* at PageID 4.) He also alleges that his § 841(a)(1) convictions "do[] not fall under the FSA's disqualifying list" because he did not receive a role enhancement under the Sentencing Guidelines. (*Id.* at PageID 5.) Petitioner asks that the Court "order the BOP to calculate and apply approximately 400 accrued FSA credits toward prerelease custody ([Residential Reentry Center (RRC)] or home confinement) and/or supervised release." (*Id.*)

## **ANALYSIS**

Respondent argues that the Court should dismiss the § 2241 Petition for three reasons: (1) Petitioner failed to exhaust his administrative remedies with the BOP (ECF No. 10 at PageID 22–25); (2) the BOP can determine Petitioner's place of confinement (*id.* at PageID 25–27); and (3) Petitioner has no constitutional liberty interest in pre-release custody (*id.* at PageID 25–28).[4] The Court considers these arguments in turn.

## I.    **Exhaustion of Administrative Remedies**

Although § 2241 does not contain an express statutory exhaustion requirement, federal inmates must generally exhaust all administrative remedies available before filing a § 2241 petition. *See Little v. Hopkins*, 638 F.2d 953, 953–54 (6th Cir. 1981) ("It is well established that federal prisoners complaining of events or conditions relating to their custody must exhaust their administrative remedies before habeas relief may be granted."). The BOP has established a

---

[4] Respondent's supports the Motion to Dismiss with these exhibits: (1) a Declaration of Robin Eads, a Paralegal for the BOP with access to official records for BOP inmates; (2) Petitioner's SENTRY Report; (3) the BOP's June 13, 2023 memorandum on application of the FSA to inmates with detainers and pending charges; (4) Petitioner's FSA Time Credit Assessment; (5) Petitioner's SENTRY Administrative Remedy Report; (6) a copy of the detainer action letter and warrant from the State of Missouri; and (7) a memorandum from Petitioner's Unit Manager regarding the justification for not referring Petitioner to RRC. (ECF Nos. 10-1–10-7.)

3

three-tiered Administrative Remedy Program by which an inmate may progressively redress grievances at the institutional, Regional, and Central Office (national) levels.[5]  *See* 28 C.F.R. § 542.10 *et seq.*  Relevant to the allegations in the Petition here, "[c]omplete exhaustion of [those] administrative remedies is a prerequisite to seeking review of the BOP's calculation of sentencing credit."  *Cooper v. Batts*, No. 21-5828, 2022 WL 4009862, at *2 (6th Cir. Aug. 25, 2022) (internal quotation marks and citation omitted).

But a petitioner's failure to exhaust administrative remedies "may be excused where pursuing such remedies would be futile or unable to afford the petitioner the relief he seeks."  *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 236 (6th Cir. 2006).  That said, "[t]he Sixth Circuit requires some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable."  *Napier v. Laurel Cnty.*, 636 F.3d 218, 223 (6th Cir. 2011) (internal quotation marks and citations omitted).  A petitioner cannot "simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so."  *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999).

Petitioner asserts he "fully exhausted the BOP's administrative remedy process; his requests were denied solely because of the detainer."  (ECF No. 2 at PageID 4.)  To be sure,

---

[5] Under the BOP's tiered process, an inmate must first seek to resolve his matter of concern informally with prison staff (the BP-8).  28 C.F.R. § 542.13(a).  If informal resolution is not possible, the inmate may file a formal written Administrative Remedy Request (a BP-9) with the facility's warden within 20 days of the incident prompting the request.  28 C.F.R. § 542.14(a).  If the inmate is dissatisfied with the warden's response, he may appeal to the regional director (a BP-10) within 20 days of the date the warden signed the response.  28 C.F.R. § 542.15(a).  If the prisoner is not satisfied with the regional director's response, he may submit an appeal (a BP-11) to the BOP's general counsel within 30 days of the regional director's signed response.  *Id*.  This appeal is the final level of administrative review.  *Id*.

Petitioner "has a total of three remedy submissions, in the same series, all of which concern his FSA eligibility." (ECF No. 10-1 at PageID 31 (Eads Declaration); *see* ECF No. 10-5 (Petitioner's administrative remedy history).) Petitioner "received a denial at the institution level." (*Id.*) Petitioner appealed to the regional office, but that appeal was rejected as untimely. (*Id.*) "Instead of filing a new administrative remedy or providing proof that the delay was not [his] fault, [Petitioner] appealed to the central office level." (*Id.*) The Central Office rejected that appeal because "it was filed at the wrong level and was untimely." (*Id.*)

Proper exhaustion of administrative remedies requires compliance with the BOP's deadlines and other procedural rules. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining that "proper exhaustion of administrative remedies . . . 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). And here, Petitioner did not fully exhaust his administrative remedies because the Regional and Central Office levels did not address his FSA request on the merits. Yet Petitioner argues that he filed his administrative remedy at all three levels and "complied with all regulatory requirements or demonstrated valid reasons for any delays." (ECF No. 13 at PageID 95.) Petitioner asserts many arguments for why the Court should consider the administrative remedy process unavailable to him. As explained below, he makes some valid points.

There are "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross v. Blake*, 578 U.S. 632, 643 (2016). First, "an administrative procedure is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking,

5

incapable of use." *Id.* Third, administrative remedies are rendered unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

With this in mind, Petitioner contends that the Regional Office violated its own regulations by rejecting Petitioner's appeal as untimely without "conducting the analysis required by 28 C.F.R. § 542.15(a)." (ECF No. 13 at PageID 96.) And that he "provided verification in a declaration and a memorandum from BOP staff [member] Lawrence Nelson[] . . . [that] confirmed that Petitioner received the Warden's response on June 11, 2025 and requested additional time to complete the appeal." (*Id.*) Petitioner further argues that the Central Office failed to conduct an independent review of the Regional Office's procedural rejection and instead "simply adopted the Regional Office's position." (*Id.* at PageID 97.)

And he supports these arguments with well-pleaded facts. Petitioner contends that on June 12 or 13, 2025, he asked Case Manager McDaniel for a BP-10 form to prepare his appeal to the Regional Office. (ECF No. 13 at PageID 89.) McDaniel told Petitioner to "wait for Counselor Alexander" and "did not provide the form until June 18, 2025—six to seven days later." (*Id.*) Petitioner claims this delay "consumed nearly one-third of [his] 20-day appeal window." (*Id.*) According to Petitioner, he did not receive the BP-10 form until "one day before the deadline [to file an appeal to the Regional Office] as calculated from the signature date." (*Id.*) The Warden denied Petitioner's BP-9 on May 30, 2025. (ECF No. 13-1 at PageID 113.)

Having reviewed the record,[6] the Court finds a genuine issue as to whether the BOP's administrative remedy process was rendered unavailable to Petitioner. The BOP's administrative

---

[6] The record shows Petition completed his BP-10 appeal on June 25, 2025, and mailed it to the Regional Office via certified mail on June 26, 2025. (ECF No. 13 at PageID 89–90.) Petitioner asserts that he attached three documents to his appeal: (1) a memorandum from BOP staff

6

remedy process provides that "[w]hen [an] inmate demonstrates a valid reason for delay [in submitting an appeal], these time limits may be extended.  Valid reasons for delay include those situations described in § 542.14(b) of this part."  *See* 28 C.F.R. § 542.15(a).  Those reasons include:

> an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal; an extended period of time during which the inmate was physically incapable of preparing a Request or Appeal; an unusually long period taken for informal resolution attempts; indication by an inmate, verified by staff, that a response to the inmate's request for copies of dispositions requested under § 542.19 of this part was delayed.

*See* 28 C.F.R. § 542.14(b).  This reasoning rings true here.  Petitioner has provided arguments and evidence suggesting that the process was rendered unavailable for two reasons—(1) the delay in receiving the BP-10 form, which was necessary for Petitioner to submit his appeal to the Regional Office; and (2) the Regional and Central Office's failure to follow their own regulations and consider whether Petitioner had shown a valid reason for his delay in submitting his appeal.  The Court therefore denies Respondent's motion to dismiss for Petitioner's alleged failure to exhaust his administrative remedies.

## II.     Place of Confinement and Pre-Release Custody

The Court now turns to the merits of the Motion to Dismiss.  Petitioner argues that he is entitled to relief because the BOP unlawfully denied him about 400 ETCs under the FSA based on a detainer placed against him.  (ECF No. 1 at PageID 4.)  And so he asks that the Court order

---

member Lawrence Nelson, requesting that Petitioner receive more time to complete the next step in the administrative remedy process because Petitioner did not receive the Warden's response until June 11, 2025; (2) a certified mail receipt indicating that he mailed the appeal on June 26, 2025; and (3) his own declaration "under penalty of perjury documenting the timeline and staff obstruction."  (*Id.* at PageID 90.)  Petitioner has attached copies of his BP-10 and exhibits to his response.  (ECF No. 13-1 at PageID 114–15, 119–23.)

the BOP "to calculate and apply approximately 400 accrued FSA credits towards prerelease custody (RRC or home confinement) and/or supervised release." (*Id.* at PageID 5.)  Respondent asserts that Petitioner is not entitled to such relief because the BOP is authorized to determine Petitioner's place of confinement and because Petitioner has no liberty interest in pre-release custody.  (ECF No. 10 at PageID 25–28.)  The Court agrees with Respondent for the reasons below.

Section 2241 authorizes courts to issue writs of habeas corpus on behalf of prisoners who are "in custody in violation of the Constitution or laws or treaties of the United States."  Federal law provides that the BOP "shall designate the place of the prisoner's imprisonment."  *See* 18 U.S.C. § 3621(b).  The BOP "has broad discretion in administering a prisoner's sentence, and decisions to place a convicted defendant within a particular program or a particular facility are decisions" within the BOP's sole discretion.  *See Klawonn v. United States*, 11 F. App'x 559, 561 (6th Cir. 2001) (citation omitted).  And the BOP's "designation of a place of imprisonment . . . is not reviewable by any court."  *See* 18 U.S.C. § 3621(b).

While a court may recommend placement in a community corrections facility, that recommendation "shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person."  18 U.S.C. § 36231(b); *see also United States v. Jalili*, 925 F.2d 889, 894 (6th Cir. 1991) ("While a judge has wide discretion in determining the length and type of sentence, the court has no jurisdiction to select the place where the sentence will be served.  Authority to determine place of confinement resides in the executive branch of government . . . and is delegated to the Bureau of Prisons." (quoting *United States v. Dragna*, 746 F.2d 457, 458 (9th Cir. 1984))).

8

So Petitioner faces an uphill battle here.  Indeed, the BOP may place a prisoner in "pre-release custody" to afford the prisoner a reasonable opportunity to adjust to and prepare for reentry into the community.  *See* 18 U.S.C. § 3624(c).  But the FSA "did not change that the BOP—not the Court—has the authority to make determinations related to prerelease custody." *Stout v. Warden, FCI Ashland*, No. 25-cv-0038-DLB, 2025 WL 2601516, at *1 (E.D. Ky. Aug. 13, 2025) (citation omitted)); *see also Abbott v. Rardin*, No. 2:25-cv-10739-TGB-PTM, 2026 WL 1167419, at *4 (E.D. Mich. Jan. 15, 2026) ("the FSA did not alter the BOP's statutory, discretionary authority under the [SCA] to determine when, or if, a prisoner should be placed in an RRC or home confinement"); *Frierson v. Rardin*, No. 2:24-cv-12456, 2025 WL 410072, at *5 (E.D. Mich. Feb. 5, 2025) (a court has "no power" to order pre-release custody because "[t]he [FSA] did not alter the BOP's statutory authority to determine when, or if, a petitioner should be released to a[n] [RRC] or to home confinement"); *United States v. Mathews*, No. 21-1697, 2022 WL 1410979, at *3 (6th Cir. Apr. 4, 2022) ("Decisions regarding home confinement . . . [remain] reserved to the [BOP].").

Despite all this, Petitioner suggests that the BOP violated Program Statement 5410.01 by refusing to apply his FSA credits to transfer him to pre-release custody.  (ECF No. 13 at PageID 105.)  Yet that does not change that "[t]he BOP's Program Statements are not 'laws' within the meaning of [§ 2241], because they do not constitute regulations promulgated in compliance with the requirements of the Administrative Procedure Act.  Rather, they are internal agency guidelines that are 'akin to . . . interpretive rules.'"  *See Hutchins v. FMC Lexington*, No. 5:08-393-JMH, 2008 WL 4534241, at *2 (E.D. Ky. Oct. 7, 2008) (quoting *Reno v. Koray*, 515 U.S. 50, 61 (1995)).

So any suggestion by Petitioner that the BOP has misapplied Program Statement 5410.01 and the memorandum providing guidance is simply not cognizable under § 2241. Put simply, Petitioner has failed to state a habeas claim this Court can recognize. The Court therefore **GRANTS** Respondent's Motion to Dismiss.

### APPELLATE ISSUES

Federal prisoners who file petitions under § 2241 challenging their federal custody need not obtain certificates of appealability under 28 U.S.C. § 2253(c)(1). *See Witham v. United States*, 355 F.3d 501, 504 (6th Cir. 2004) (explaining that § 2253 "does not require a certificate of appealability for appeals from denials of relief in cases properly brought under § 2241, where detention is pursuant to federal process"). They must instead only pay the filing fee required by 28 U.S.C. §§ 1913 and 1917. And if the petitioner cannot pay the fee, he must obtain pauper status under Federal Rule of Appellate Procedure 24(a). *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). But Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the petitioner must move to proceed in forma pauperis in the appellate court. *See* Fed. R. App. P. 24(a)(4)-(5). For the reasons explained in the section above, the Court finds that any appeal would not be taken in good faith. The Court therefore **CERTIFIES** under Rule 24(a) that any appeal would not be taken in good faith and **DENIES** Petitioner leave to appeal in forma pauperis.

10

**SO ORDERED**, this 26th day of May, 2026.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE